[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14660
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00309-CV-BBM-1


DENNIS HAM,
ANTHONY DAVIDSON,
MANUEL TRUJILLO,


                                                    Plaintiffs-Appellees,


                            versus


CITY OF ATLANTA, GEORGIA,
LYNETTE YOUNG,


                                                    Defendants,


DENNIS RUBIN,


                                                    Defendant-Appellant.


_____

No. 09-14807
Non-Argument Calendar

_____

D. C. Docket No. 07-00326-CV-1-BBM

RUSSELL E. MARTIN,
individually and on behalf
of all those Similarly Situated,
DOUGLAS HATCHER,
JAMES RAWLS,
ALFORD TERRY, JR.,
ROBERT WEBBER, et al.,

Plaintiffs-Appellees,

LEE CRAWFORD,

Plaintiff,

versus

CITY OF ATLANTA, GEORGIA,
LYNETTE YOUNG,

Defendants,

DENNIS L. RUBIN,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(July 14, 2010)

Before BARKETT, HULL and FAY, Circuit Judges.

2

PER CURIAM:

The City of Atlanta ("the City") and Dennis Rubin, the former Fire Chief of the Atlanta Fire Rescue Department ("AFRD"), appeal the district court's denial of their motions for summary judgment in two employment cases brought pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1986. The two cases have been consolidated on appeal. Rubin and the City argue that Rubin was entitled to qualified immunity and that the district court erred in denying their motions for summary judgment with respect to the plaintiffs' 42 U.S.C. § 1983 claims. For the reasons set forth below, we affirm.

**I.**

Dennis Ham, Anthony Davidson, and Manuel Trujillo filed a third amended complaint against the City; Rubin; and Lynette Young, the City's Chief Operating Officer. The complaint alleged that the plaintiffs, Caucasian AFRD employees, were passed over for promotion in favor of less-qualified, less-experienced African American candidates because of their race. The complaint set forth four counts of civil rights violations under 42 U.S.C. § 1983 and one count of racial discrimination, in violation of Title VII.

Russell Martin and 27 other Caucasian AFRD employees also filed a third amended complaint against the City, Rubin, and Young, alleging that they

3

implemented a racial balancing program that allocated promotions between Caucasian and African American employees and denied promotions to qualified Caucasians because of their race. All of the *Martin* plaintiffs held the rank of Captain and were otherwise qualified to participate in 2004 and 2006 appointment processes for Battalion and Section Chief positions. The complaint set forth five counts, three of which were brought under 42 U.S.C. § 1983.

The district court issued orders consolidating discovery in *Ham* and *Martin*. Documents produced during discovery showed the following. All AFRD appointments to ranks above Captain, i.e., Section Chief, Battalion Chief, Assistant Chief, and Deputy Chief, were within the sole discretion of the Fire Chief. The positions of Battalion and Section Chief were equal in terms of rank and pay grade.

On July 16, 2004, Rubin announced the commencement of an appointment process that would produce a list of candidates who qualified for appointment to Battalion and Section Chief positions. To participate in the appointment process, AFRD members had to possess certain minimum qualifications, including two years of satisfactory service as a Captain with the AFRD. The actual competitive process consisted of three components: first, qualified candidates underwent "a standardized 'In-Basket' examination," which was conducted by an outside vendor; the top 40 scoring candidates then attended an oral interview; finally, all

4

candidates participating in the oral interview submitted a personal resume. Based on their oral interview scores, the candidates were placed in three categories: Outstanding, Well Qualified, and Qualified. Rubin's goal was to promote everyone within the Outstanding category first, followed by those in the Well Qualified category, then, finally, those in the Qualified category. He was not required to rely on the ranking of candidates, however, because the Battalion and Section Chief appointments were entirely within his discretion.

Rubin stated in his deposition that he felt "the makeup of the fire department should roughly mirror the community it works in." He acknowledged that, when he was Fire Chief, he maintained demographic statistics for the AFRD, and he identified a packet of documents, entitled "EEO Statistics Promotions and Appointments," as an example of the statistics he kept. The packet contained spreadsheets showing the names, dates of appointment, gender, and race of employees who had been appointed to Battalion, Section, Assistant, and Deputy Chief positions. Rubin stated that he had never used this demographic information to determine who to hire or promote.

Rubin acknowledged receiving an e-mail with the subject "Requested Information/Hiring Demographics and Vacancies" from John McNeil, the Deputy Chief for Support Services. The e-mail stated "[h]ere are the most up-to-date

5

demographics on our hiring and the current sworn vacancies as requested." This e-mail was sent on October 10, 2006, one day before Rubin began the 2006 Battalion/Section Chief appointment process. Rubin stated that there was no correlation between the e-mail and the commencement of the appointment process.

In his deposition, John McNeil stated that he provided Rubin with demographic information about AFRD recruits "maybe three times a year," when the department was preparing to make presentations to AFRD's executive staff and the City's mayoral staff. The demographic information was "broken down by . . . race [and] gender." McNeil noted that Rubin asked him for statistics about promotions, but he did not have the information and Rubin asked another employee for the information.

During his deposition, Davidson stated that, in April 2004, Rubin verbally offered him a Deputy Chief position. Davidson stated that he accepted the position, but Rubin subsequently offered the position to Wilmond Meadows, an African American. Davidson described Meadows as "an inexperienced chief officer" who had "moved up three ranks in 18 months." After Rubin offered the position to Meadows, Rubin informed Davidson that "Young would not allow him to appoint a white male to the position." Davidson noted that a black female had previously occupied the position he was offered, and that Rubin "had expressed his

concerns about diversity and the appearance of replacing the African American female with a white male." Davidson also stated that he was responsible for making performance review presentations to the city council, and that Rubin had asked him to include "demographic information and diversity information" in the presentations.

Rubin acknowledged, in his deposition, that he had discussed promotion possibilities with Davidson on several occasions, but Rubin "saw in [Davidson] some behaviors that were very, very alarming." Rubin noted that Davidson got into a dispute with the City's chief information officer over a contractual agreement the City had with a private company, and that Davidson's behavior embarrassed him in several meetings. He stated that Davidson's personnel skills "were horrible" and that he found him difficult to work with. Rubin denied offering Davidson the Deputy Chief of Administration position. Davidson received a letter of counseling on July 25, 2001, for displaying discourteous and unprofessional behavior by abruptly exiting a meeting.

In his deposition, Ham stated that he was passed over for promotions multiple times and eventually met with Rubin to ask him "if [he] was up against a diversity issue." According to Ham, Rubin "came right out of his chair and basically said if I have to explain diversity to you, you probably don't have any

business being a battalion chief." Rubin then showed Ham "a document where he was required to list African American versus whites in positions." Ham felt the promotions of African American employees Randall Slaughter, Ricky Lovelace, and Meadows to Assistant Chief positions were discriminatory. He noted that Slaughter "had no desire to be a chief for several years," and Meadows was promoted from captain to battalion chief to assistant chief in a very short period of time.

After Ham filed the instant lawsuit, Rubin attempted to transfer him to a position that would not reduce his rank or pay, but would require him to work a 40-hour work week. Instead of accepting the transfer, Ham accepted a demotion to Captain. During Rubin's deposition, Rubin stated that he considered Ham's decision to take a demotion rather than to accept an appointment to a Section Chief position to be "[p]retty poor behavior," because Ham was "not supporting the agency."

During his deposition, Trujillo stated that he was discriminated against in 2005, when Meadows, Lovelace, and Slaughter were promoted to Assistant Chief. Trujillo had seen a report written by Rubin that indicated "how many blacks he had in certain positions, [and] how many whites he had in certain positions."

In their depositions, many of the *Martin* plaintiffs stated that they never

8

heard Rubin expressly state that he considered race when making appointments. However, Gregory Shinkle heard Rubin say during an officers' meeting that he would "promote according to the diversity of the city," and Michael Rice once attended a class taught by Rubin, during which Rubin presented a chart showing the racial balance of the fire department and indicated that he would take steps to maintain the racial balance. Thomas Doyle also remembered attending a training meeting during which Rubin "put up statistical boards as far as hiring practices and how he felt about . . . different avenues within the department. The whole thing was totally divided by race." Doyle noted that the chart Rubin presented showed that Rubin "expected to hire a certain percentage of blacks, a certain percentage of Caucasians, a certain percentage of females." McNeil and Rice heard Rubin say during a meeting that the racial makeup of the AFRD should mirror the racial makeup of the surrounding community. During an officers' meeting, Jimmy Gittens saw Rubin with a document that showed "demographics of black captains, white captains, black battalion chiefs, white battalion chiefs."

After discovery concluded, the defendants moved for summary judgment on all counts in both *Ham* and *Martin*. Rubin argued that he was entitled to qualified immunity with respect to the plaintiffs' claims against him in his individual capacity, because he was acting within his discretionary capacity when he made the

9

appointments in question, and the plaintiffs could not show that a reasonable official in his position would have known that he was violating a clearly established equal protection right by exercising his unfettered discretion to make the appointments. Rubin also argued that his challenged appointment decisions were supported by legitimate, non-discriminatory reasons – specifically, his discretion to make the appointments, Ham's unwillingness to accept a transfer to a Section Chief position, and the race-neutral requirements that employees had to meet to qualify for the 2004 and 2006 Battalion/Section Chief appointment processes.

The plaintiffs responded, arguing that Rubin violated their clearly established constitutional right "to be free from race discrimination in employment actions." They contended that Rubin was not entitled to qualified immunity, because he "had more than 'fair warning' that basing his appointments on race could subject him to personal liability under Section 1983."

The magistrate issued a report and recommendations ("R&Rs") that recommended denying Rubin qualified immunity in both *Ham* and *Martin*. The magistrate noted that Rubin clearly was acting within his discretionary capacity when he took the challenged employment actions and that "the constitutional right to be free from racial discrimination in the employment context is clearly

established." The magistrate determined that there was a genuine issue of fact as to whether Rubin discriminated against the plaintiffs on the basis of race, but noted that this finding did not automatically deprive Rubin of qualified immunity. Ultimately, the magistrate determined that Rubin was not entitled to qualified immunity because the record failed to show indisputably that Rubin's appointments were motivated, at least in part, by lawful considerations. The magistrate noted that, although Rubin expressed dissatisfaction with Ham's decision to accept a demotion rather than an undesirable Assistant Chief position, this occurred in 2006 and would not have explained Rubin's decision not to promote Ham to an Assistant Chief position in 2005. Similarly, the magistrate determined that, although Rubin expressed concerns about Davidson's behavior, he failed to show indisputably that Davidson was denied a Deputy Chief appointment for other than racial considerations. The magistrate found that Rubin offered no legitimate, non-discriminatory reason for failing to promote Trujillo. With respect to the *Martin* plaintiffs, the magistrate found that Rubin "offered no argument regarding the legitimate, non-discriminatory reasons why plaintiffs were not promoted." The magistrate noted that, although there was some evidence that two of the plaintiffs performed poorly in their interviews, "this evidence hardly establishes that Rubin was indisputably motivated by lawful concerns, and it only

11

pertains to two of the plaintiffs.

Rubin objected to the R&Rs, arguing that he was entitled to qualified immunity on the plaintiffs' § 1983 claims because the plaintiffs failed to show that his actions violated their right to be free from employment discrimination. He contended that the plaintiffs' subjective beliefs that he had a discriminatory intent were insufficient to overcome the presumption of qualified immunity. Rubin pointed out that Davidson had received a letter of counseling and was difficult to work with and offensive. He contended that Trujillo failed to present any evidence establishing discriminatory intent. Rubin argued that Ham could not establish discriminatory intent, because he relied solely on his conclusory allegations that he was better qualified for the deputy chief position than the individuals who were appointed.

In both *Martin* and *Ham*, the district court adopted the portions of the R&Rs that found that Rubin was not entitled to qualified immunity. In *Ham*, it granted the defendants' motion for summary judgment with respect to Ham's retaliation claim and all claims against Young, but denied the motion with respect to Counts I, II, III, and V, as alleged against Rubin and the City. In *Martin*, the court granted the defendants' motion for summary judgment with respect to all claims against Young, but denied the motion with respect to the 42 U.S.C. § 1983 claims, as

12

alleged against Rubin, and with respect to the plaintiffs' Title VII claim, as alleged against the City.

The defendants filed notices of appeal, seeking to appeal the district court's orders denying their motions for summary judgment. We issued jurisdictional questions asking the parties to address whether the district court's orders denying summary judgment were immediately appealable. After receiving the parties' responses to the jurisdictional question, we ordered that the qualified immunity issues relating to Rubin, and the § 1983 claims, to the extent necessary to resolve the qualified immunity issues, be carried with the case. We dismissed the remaining issues for lack of jurisdiction.

## II.

### A.    *Jurisdiction*

We review jurisdictional issues *de novo*. *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009). "[A] district judge's denial of [qualified immunity as an] affirmative defense is an immediately appealable collateral order, *provided that it concerns solely the pure legal decision of (1) whether the implicated federal constitutional right was clearly established and (2) whether the alleged acts violated that law.*" *Koch v. Rugg*, 221 F.3d 1283, 1294 (11th Cir. 2000).

As an initial matter, we lack jurisdiction to review the appellants' arguments

regarding the final policymaker theory of liability, because this issue is unrelated to the qualified immunity inquiry and, therefore, was dismissed by our December 11, 2009 orders. The appellants' argument regarding the sufficiency of the appellees' evidence establishing discriminatory intent is also not properly before us, because we do not weigh the sufficiency of the evidence in resolving a qualified immunity issue, but instead, view the facts in the light most favorable to the plaintiff. *See Bryant v. Jones*, 575 F.3d 1281, 1295 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 1536 (2010) (noting that we view all the evidence in the light most favorable to the plaintiffs and draws all inferences in the plaintiffs' favor when determining whether the defendant is entitled to qualified immunity); *see also Koch*, 221 F.3d at 1296 (holding that, in interlocutory appeals involving the denial of qualified immunity, we "lack jurisdiction [over] appeals regarding solely evidence sufficiency because they are not immediately appealable final decisions since they involve the determination of facts a party may, or may not, be able to prove at trial") (quotation omitted). Thus, because the appellants' sufficiency of the evidence argument is unrelated to the issue of qualified immunity, it was dismissed by our December 11, 2009 orders.

With respect to his qualified immunity claim, Rubin argues that the district court erred by defining the plaintiffs' clearly established constitutional right too

broadly and by finding that his actions violated a clearly established constitutional right.  Both of these issues are questions of law over which we have jurisdiction. *See Koch*, 221 F.3d at 1294.  Furthermore, where a party appeals a core qualified immunity issue, we may choose to consider the district court's factual findings as well.  *McMillian v. Johnson*, 88 F.3d 1554, 1563 (11th Cir. 1996).  Thus, because Rubin has raised core qualified immunity issues – whether the plaintiffs had a clearly established constitutional right and whether his actions violated this right – we review the district court's factual findings supporting the denial of qualified immunity.

### B.      *Denial of Summary Judgment on Qualified Immunity Grounds*

We review *de novo* a district court's denial of qualified immunity. *Townsend v. Jefferson County*, 601 F.3d 1152, 1157 (11th Cir. 2010).  If the district court has denied summary judgment based on qualified immunity grounds, we must view all evidence in the light most favorable to the nonmoving party.  *Id.*

"When an individual defendant moves for summary judgment based on qualified immunity, a district judge must determine whether there is a genuine issue of material fact as to whether the defendant committed conduct that violated clearly established law."  *Koch*, 221 F.3d at 1295 (quotation omitted).  "This decision involves a two-part analysis: (1) defining the official's conduct, based on

15

the record and viewed most favorably to the non-moving party, and (2) determining whether a reasonable public official could have believed that the questioned conduct was lawful under clearly established law." *Id.* We have held, in the qualified immunity context, that the right to be free from employment discrimination on the basis of race is clearly established. *See Rioux v. City of Atlanta*, 520 F.3d 1269, 1283 (11th Cir. 2008); *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1378 (11th Cir. 1997); *Bogle v. McClure*, 332 F.3d 1347, 1355 (11th Cir. 2003). However, where the facts assumed for summary judgment purposes show that the defendant acted with both lawful and unlawful motivations, the defendant is entitled to qualified immunity. *Foy v. Holston*, 94 F.3d 1528, 1535 (11th Cir. 1996). Thus, a "defendant is entitled to qualified immunity under the *Foy* rationale only where, among other things, the record indisputably establishes that the defendant in fact was motivated, *at least in part*, by lawful considerations." *Stanley v. City of Dalton*, 219 F.3d 1280, 1296 (11th Cir. 2000).

### i. Ham

Viewing the evidence in the light most favorable to Ham, *see Townsend*, 601 F.3d at 1157, the record establishes that Rubin kept records indicating the race of employees who were appointed to chief officer positions. Furthermore, when Ham asked Rubin why he was not appointed to an Assistant Chief position, Rubin

16

showed him a document showing the racial composition of various AFRD ranks and told Ham that he did not have "any business being a battalion chief" if Rubin had to explain diversity to him. These facts, if true, would allow a reasonable jury to conclude that Rubin declined to promote Ham because of his race. A reasonable public official could not have believed that refusing to promote Ham because of his race was lawful, because we have held that "it was clearly established [as early as] 1999 that it was unlawful for a public official to make a [race-based] decision concerning . . . promotion." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1272 (11th Cir. 2003). Thus, the evidence, viewed in the light most favorable to Ham, establishes that Rubin's conduct violated clearly established law. *See Townsend*, 601 F.3d at 1157.

Pursuant to *Foy*, however, Rubin is still entitled to qualified immunity if the record indisputably shows that his failure to promote Ham was based, at least in part, on a factor other than race. *See Foy*, 94 F.3d at 1535; *Stanley*, 219 F.3d at 1296. On appeal, Rubin generally argues that his appointments to Assistant Chief positions were based on "subjective criteria," such as an employee's qualifications, "commitment to organization, personality, work habits, and personal observation." These general assertions do not constitute indisputable evidence that Rubin was motivated by lawful considerations, because Rubin cites no evidence in the record

17

indicating that Ham was, in fact, less qualified than Slaughter, Lovelace, and Meadows.

In the R&R, the magistrate noted that Rubin had expressed concern about Ham's commitment to AFRD based on his refusal to accept a transfer to Section Chief. However, on appeal, Rubin does not cite this as a lawful consideration motivating his decision not to appoint Ham. Even if Rubin had raised this issue on appeal, he would not be entitled to qualified immunity because the record indicates that Ham did not refuse the transfer until after he filed the instant lawsuit, in February 2007, whereas the alleged discrimination occurred in 2005, when Lovelace, Slaughter, and Meadows were appointed to Assistant Chief positions. Accordingly, because the evidence, viewed in the light most favorable to Ham, shows that Rubin violated Ham's clearly established right to be free from employment discrimination on the basis of race, and because the record fails to indisputably show that Rubin's failure to appoint Ham to an Assistant Chief position was based, at least in part, on lawful considerations, the district court did not err in denying Rubin qualified immunity with respect to Ham's discrimination claims. *See Koch*, 221 F.3d at 1295; *Stanley*, 219 F.3d at 1296.

### *ii.* *Davidson*

The facts, viewed in the light most favorable to Davidson, establish the

following. Rubin offered Davidson a Deputy Chief position in April 2004, but subsequently offered the position to Meadows, an African American. Meadows was an inexperienced chief officer who had moved up three ranks in 18 months, and Rubin specifically informed Davidson that he could not appoint a white male to the position. These facts, if true, would allow a reasonable jury to conclude that Rubin declined to promote Davidson because of his race. As noted above, a reasonable public official could not have believed that refusing to promote Davidson because of his race was lawful, because we have held that "it was clearly established [as early as] 1999 that it was unlawful for a public official to make a [race-based] decision concerning . . . promotion." *Williams*, 341 F.3d at 1272. Thus, the evidence, viewed in the light most favorable to Davidson, establishes that Rubin's conduct violated clearly established law. *See Townsend*, 601 F.3d at 1157.

Rubin is nevertheless entitled to qualified immunity if the record indisputably shows that his failure to promote Davidson to the Deputy Chief position was based, at least in part, on a factor other than race. *See Foy*, 94 F.3d at 1535. In his appellate brief, Rubin fails to offer any legitimate, non-discriminatory reason for failing to appoint Davidson to the Deputy Chief position, other than to say that the appointment was entirely within his own discretion, and that he generally appointed individuals with the best qualifications. As noted above, these

19

general statements do not constitute indisputable evidence that Rubin's decision not to promote Davidson was based on a factor other than race, as Rubin cites no record evidence showing that Davidson was less qualified than Meadows, who was ultimately appointed to the Deputy Chief position. Although Rubin, during his deposition, expressed dissatisfaction with Davidson's behavior, he does not cite this in his appellate brief as a reason for failing to promote Davidson. Thus, Rubin has abandoned any such argument. *See Smith v. Sec., Dept. Of Corrs.*, 572 F.3d 1327, 1342 n.8 (11th Cir. 2009) ("Failure to offer any argument on an issue in a brief abandons that issue"). Even if Rubin had not abandoned this argument, he would not be entitled to qualified immunity, because any evidence that Rubin did not promote Davidson to the Deputy Chief position because of Davidson's behavior is disputed by Davidson's deposition testimony that Rubin informed him that he could not promote him because he was a white male. *See Stanley*, 219 F.3d 1280 (holding that to be entitled to qualified immunity under *Foy*, the record must *indisputably* establish that the defendant was motivated, at least in part, by lawful considerations). Accordingly, the district court did not err in denying Rubin qualified immunity on Davidson's claims.

### iii. Trujillo

The evidence, viewed in a light most favorable to Trujillo, establishes that

20

Rubin kept records indicating the race of employees who were appointed to chief officer positions. In 2005, three black males – Meadows, Lovelace, and Slaughter – were promoted to Assistant Chief instead of Trujillo, a white male. In addition, Rubin made statements to Ham and Davidson indicating that he considered race in making discretionary appointments to chief positions. This evidence indicates that Rubin considered race in making appointments and, therefore, Rubin's actions violated Trujillo's clearly established right to be free from employment discrimination based on race. *See Koch*, 221 F.3d at 1295. With respect to *Foy*, the district court correctly noted that there was no evidence in the record indicating that Rubin's failure to appoint Trujillo to an Assistant Chief position was motivated in any way by lawful considerations. Thus, the district court did not err in denying Rubin qualified immunity with respect to Trujillo's discrimination claims. *See Koch*, 221 F.3d at 1295; *Stanley*, 219 F.3d at 1296.

### iv.    *Martin Plaintiffs*

Several of the *Martin* plaintiffs stated that they heard Rubin say during a meeting that he would "promote according to the diversity of the city" and take steps to maintain the racial balance of the AFRD, and that the racial makeup of the AFRD should mirror the racial makeup of the surrounding community. One

plaintiff once saw Rubin with a document showing the racial demographics of Captains and Battalion Chiefs, and another plaintiff stated that, during a meeting, Rubin presented a chart showing how he expected to hire a certain percentage of black, white, and female employees. Viewing this evidence in the light most favorable to the plaintiffs, *see Townsend*, 601 F.3d at 1157, a jury could reasonably conclude that Rubin's appointments to Battalion and Section Chief positions were based on race. As noted above, it is clearly established that an employer may not base promotion decisions on race. *See Williams*, 341 F.3d at 1272. On appeal, Rubin argues that his 2004 and 2006 Battalion and Section Chief appointments were based on a factor other than race, because he "implemented a comprehensive multi-phase examination based appointment process." However, even assuming that the 2004 and 2006 in-basket test, oral interview, and resume review were conducted in a race-neutral manner, Rubin was not bound by the results of this process and retained ultimate authority to determine who to promote to Battalion and Section Chief. Rubin failed to explain why he exercised his discretion in such a manner as to deny appointments to the individual plaintiffs in this case. Thus, he has offered no evidence that his appointments were motivated by lawful considerations. *See Foy*, 94 F.3d at 1535; *Stanley*, 219 F.3d at 1296. Accordingly, we affirm the district court's denial of Rubin's motions for summary judgment on

qualified immunity grounds in both *Ham* and *Martin*.

**AFFIRMED.**