[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14389
_____

D.C. Docket No. 1:07-cv-00326-WSD

RUSSELL E. MARTIN, individually and on behalf of all those similarly situated,
DOUGLAS HATCHER,
JAMES RAWLS,
ALFORD TERRY, JR.,
ROBERT WEBBER,
RAYMOND D. BEARDEN,
JAN PETER THIEL,
GREGG W. RUCKSTUHL,
WILLIAM SCOTT BOSTWICK,
DANIEL F. O'NEILL,
GREGORY L. SHINKLE,
DANNY G. BYESS,
SCOTT WHALEN,
MICHAEL BECKMAN,
KENNETH N. HALE,
PHILLIP YARRI,
RICHARD M. BODANE,
MICHAEL RICE,
ROBERT HUMPHREYS,
MARK WAYNE FARMER,
DENNIS BROWN,
GRIFFIN E. HOWELL, III, as Chapter 7 Trustee for JAMES ROBERT DYCUS,

Plaintiffs - Appellants,

JIMMY DAVID GITTENS, MR., et al.,

Plaintiffs,

versus

CITY OF ATLANTA, GEORGIA,
DENNIS L. RUBIN,

                                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 4, 2014)

Before FAY, Circuit Judge, and HODGES[*] and HUCK,[**] District Judges.

PER CURIAM:

Appellants, twenty-two current and former Caucasian Fire Captains of the City of Atlanta Fire and Rescue Department ("the Department"), appeal the district judge's entry of judgment as a matter of law and final judgment following a jury trial against Appellees, the City of Atlanta ("the City") and Dennis Rubin.  We affirm.

## I. BACKGROUND

In July 2004, Rubin, the Department Chief, initiated a new process for the promotion of Captains to the position of Battalion or Section Chief.[1]  Under the

---

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

[**] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

2

new process, Captains were required to meet certain minimum service qualifications; if these were met, they could take an exam administered by an outside vendor. Those Captains, who passed the exam, interviewed with a panel of officials from the Department and fire departments in other jurisdictions. The panel ranked the interviewed candidates as "outstanding," "well qualified," or "qualified." Rubin then would make promotional appointments from the panel's ranked list. After two years, the list would expire, and the process would begin again.

In October 2004, after candidates had taken the exam and interviewed, the panel developed its first list ("2004 List"). The 2004 List ranked sixteen (seven Caucasian and eight African-American)[2] Captains in the "outstanding" category, twelve (ten Caucasian and two African-American) Captains in the "well qualified" category, and sixteen Captains in the "qualified" category. Thirteen Appellants were on the 2004 List.[3] Of these, ten were in the "qualified" category (the lowest

---

[1] Prior to the new process, the appointment of Battalion and Section Chiefs did not require testing; the Department Chief alone selected whom to promote.

[2] The record does not show the race of Calvin Matthews, a Captain who was rated "outstanding."

[3] The Appellants on the 2004 List were Raymond D. Bearden, Michael Beckman, Richard M. Bodane, William Scott Bostwick, Dennis Brown, Danny G. Byess, Russell E. Martin, Daniel F. O'Neill, Gregory L. Shinkle, Alfred Terry, Jr., Jan Peter Thiel, Scott Whalen, and Phillip Yarri.

category),[4] three were in the "well qualified" category,[5] and none were in the "outstanding" category. Before publication of the 2004 List, Rubin asked the interview panel to consider changing one Captain's ranking, Cindy Thompson. Thompson, a Caucasian Captain, was elevated to "outstanding" so that she could be promoted to a specific position for which she was specially trained.[6]

Rubin made promotions from the 2004 List, first appointing Captains in the "outstanding" category, including Thompson. When all "outstanding" Captains were promoted, he began appointments from the "well qualified" group. All nine of the African-American Captains who were promoted were from the "outstanding" and "well qualified" categories.

In January 2007, a new list was generated by the panel that ranked twelve Captains in the "outstanding" category, seventeen Captains in the "highly qualified" category, and eleven Captains in the "qualified" category. Eighteen Appellants were on the 2007 List.[7] Of these, six were ranked in the "qualified"

---

[4] The Appellants in the 2004 "qualified" category were Bearden, Beckman, Bodane, Bostwick, Brown, Byess, Terry, Thiel, Whalen, and Yarri.

[5] The Appellants in the 2004 "well qualified" category were Martin, O'Neill, and Shinkle.

[6] Rubin testified that Thompson had been de facto performing the job functions of the position to which she was being promoted, and had received specialized course training for that position.

[7] The Appellants on the 2007 List were Bearden, Beckman, Bostwick, Byess, James Robert Dycus, Mark Wayne Farmer, Kenneth N. Hale, Douglas Hatcher, Robert Humphreys, Martin, O'Neill, Rawls, Michael Dale Rice, Gregg W. Ruckstuhl, Shinkle, Terry, Robert Webber, and Whalen. Although Appellant Humphreys was referred to alternatively as "Rodrick Humphreys,"

4

category,[8] ten were ranked in the "highly qualified" category,[9] and two were in the "outstanding" category.[10]  Before publication of the 2007 List, Rubin asked the interview panel to consider changing one Captain's ranking.  Ronnell Johnson, an African-American Captain, was elevated to "outstanding."  Rubin testified he had asked that Johnson be classified as "outstanding" so he could promote him to a specific position for which he was qualified and in which he alone had expressed an interest.

Rubin promoted from the 2007 List in order of the rankings.  He intended to promote exclusively from the "outstanding" category and then move to the "highly qualified" category.  Rubin promoted seven Captains from the "outstanding" group, including three Caucasian Captains and four African-American Captains. Rubin subsequently left for a new position in Washington, D.C., and did not make further promotions from the 2007 List.

Russell E. Martin and twenty-seven other Caucasian Captains filed a complaint against the City of Atlanta and Rubin and alleged they were denied

---

we have used "Robert Humphreys," because that is the way the case is styled from the district court.

[8] The Appellants in the 2007 "qualified" category were Bearden, Martin, Rawls, Ruckstuhl, Webber, and Whalen.

[9] The Appellants in the 2007 "highly qualified" category were Bostwick, Byess, Dycus, Farmer, Hale, Hatcher, Humphrey, Rice, Shinkle, and Terry.

[10] The Appellants in the 2007 "outstanding" category were Beckman and O'Neill.

5

promotions because of their race.  Prior to this matter going to trial, Rubin moved for summary judgment based on qualified immunity, and the City of Atlanta also moved for summary judgment.  The motion was denied; Rubin and the City appealed.  This court upheld the denial of qualified immunity for Rubin, because "Rubin failed to explain why he exercised his discretion in such a manner as to deny appointments to the individual plaintiffs in this case . . . [and] offered no evidence that his appointments were motivated by lawful considerations." *Ham v. City of Atlanta, Ga.*, 386 F. App'x 899, 908 (11th Cir. 2010) (per curiam).

In February 2013, before trial, the parties entered into a stipulation, whereby Appellants agreed that the creation of the 2004 and 2007 Lists was not the result of discrimination.  Appellees also agreed not to introduce evidence of individualized qualifications of the candidates.  In the stipulation, Appellants specifically agreed not to "directly challenge the composition of the candidate list at trial[,] [but would instead] contend at trial that Rubin's selection from the panel-generated list resulted in a disproportionate under-representation of white candidates in the Battalion and Section Chief appointments."  Joint Agreement as to the Proposed Structure of the Trial at 3.  Therefore, it was "[Appellants'] burden . . . to demonstrate that Rubin made appointments to Section and Battalion Chief based on race." *Id.*

In March 2013, the district judge held a status conference. During the conference, Appellants agreed the case would go to trial as a disparate-treatment, not a disparate-impact case. The judge also excluded the testimony of Appellants' expert, Dr. David Macpherson.

On August 19, 2013, the case proceeded to trial. Appellants introduced evidence that Rubin expressed a desire or goal to achieve or maintain diversity in relation to employment actions. This included one statement in which Rubin commented that the Department would maintain "rich diversity" throughout hiring and this diversity should "roughly mirror the city in which it serve[s]." Trial Tr. at 131. This statement was not introduced as direct evidence of his intent on how to make promotions, but was allowed only to evaluate Rubin's intent or motive in making the challenged promotions.

After Appellants presented their case-in-chief, Appellees moved for judgment as a matter of law,[11] under Federal Rule of Civil Procedure 50. They argued the evidence was not sufficient to support the Appellants' claims. The district judge reserved ruling and, after all evidence had been admitted, Appellees renewed their motion. The judge granted judgment as a matter of law against

---

[11] Appellees also moved for judgment as a matter of law as to six firefighter Plaintiffs who had failed to testify. These Plaintiffs included Thomas C. Doyle, Jimmy David Gittens, Ronald V. Pagnota, James W. Peal, Donald Pruett, and Billy J. Shoemaker. Plaintiffs' counsel did not oppose the motion and the district judge granted it.

eighteen Appellants,[12] partially granted it against three Appellants,[13] and denied it against one Appellant.[14]  The judge granted the motion against those Appellants who belonged to lower-ranked categories from which Rubin had not made any promotions, because he had not exhausted a higher-ranked category.  The judge found Rubin's selections had been based on promoting the highest-ranked candidates first, and Appellants had failed to establish pretext.  The judge allowed the claims of Appellants, who were in the 2004 "well qualified" and 2007 "outstanding" categories (categories from which Rubin had made promotions and which he had not exhausted), to proceed to the jury.[15]  The jury returned a defense verdict as to these claims.  They found that these promotions were not denied because of race.

---

[12] Appellees' Motion for Judgment as Matter of Law was granted with respect to all claims asserted by Bearden, Bodane, Bostwick, Brown, Byess, Dycus, Farmer, Hale, Hatcher, Humphreys, Rawls, Rice, Ruckstuhl, Terry, Thiel, Webber, Whalen, and Yarri.

[13] Appellees' Motion for Judgment as Matter of Law was granted in part with respect to claims asserted by Beckman, Martin, and Shinkle.  The motion was granted as to Beckman's claim based on the 2004 List, Martin's claim based on the 2007 List, and Shinkle's claim based on the 2007 List.  The motion was denied as to Beckman's claim based on the 2007 List, Martin's claim based on the 2004 List, and Shinkle's claim based on the 2004 List.

[14] Appellees' Motion for Judgment as Matter of Law was denied with respect to all claims asserted by O'Neill.

[15] The claims that proceeded to trial included Beckman's claim based on the 2007 List, Martin's claim based on the 2004 List, O'Neill's claims based on the 2004 and 2007 Lists, and Shinkle's claim based on the 2004 List.

## II. DISCUSSION

A. Judgment as a Matter of Law

Appellants argue the district judge erred in granting Appellees' Rule 50 motion, because the district judge improperly applied the *McDonnell Douglas*[16] framework.[17]  "We review de novo a district court's grant of judgment as a matter of law under Fed. R. Civ. P. 50(a), applying the same standard that bound the district court."  *Rodriguez v. Sec'y for the Dep't of Corrs.*, 508 F.3d 611, 616 (11th Cir. 2007).

Appellants argue it was improper for the district judge to apply the *McDonnell Douglas* framework in deciding the Rule 50 motion.  They assert that *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S. Ct. 1478 (1983), stands for the proposition that a district judge cannot use the *McDonnell*

---

[16] *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

[17] Appellants also argue the law-of-the-case doctrine precluded granting Appellee's Rule 50 motion.  On interlocutory appeal, we previously determined the district judge did not err in denying Rubin's motion for summary judgment based on qualified immunity.  *Ham*, 386 F. App'x at 908.  The facts before this court on the previous appeal regarding qualified immunity, however, necessarily were different than the facts currently before us.  The interlocutory appeal hinged on whether the evidence established Rubin was entitled to qualified immunity and was not an analysis of the sufficiency of the evidence for purposes of deciding a Rule 50 motion on the ultimate issue of intentional discrimination.  Importantly, the plaintiffs in *Ham* included higher-ranked individuals who were in categories from which Rubin had made promotions, whereas judgment as a matter of law was only granted against the lower-ranked plaintiffs.  Additionally, in considering the interlocutory appeal, we rejected any attempt to expand the scope of review to include other issues in the denial of the motion for summary judgment and limited our decision to the core issue of immunity.  *Ham*, 386 F. App'x at 904.  Therefore, the law-of-the-case doctrine did not preclude the judge's ruling on the Rule 50 motion.

*Douglas* framework, when deciding a Rule 50 motion, because the presumption of discrimination is eliminated once a defendant responds to a plaintiff's prima facie case by proffering a legitimate business reason.  While the presumption of discrimination is gone, this does not end the application of the framework; the plaintiff is still required to present evidence to establish the employer's stated reasons were pretext for unlawful discrimination.  *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).[18]

In a disparate-treatment employment discrimination case, the plaintiff may prove discriminatory intent either by direct or circumstantial evidence.  *Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001).  In the absence of evidence of discriminatory intent, the defendant is entitled to judgment as a matter of law.

---

[18] As we have explained:

> If a defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the *McDonnell Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity.  However, elimination of the presumption does not imply that the trier of fact no longer may consider evidence previously introduced to establish a prima facie case. . . .

> Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the prima facie case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision. . . . In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.

*Combs*, 106 F.3d at 1528 (citations and internal quotation marks omitted).

10

*See id.* at 1190 (summary judgment case). In a failure-to-promote case, a plaintiff establishes a prima facie case of discrimination by proving (1) he is a member of a protected class, (2) he was qualified for and applied for the promotion, (3) he was rejected, and (4) an individual outside the protected class was promoted. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (per curiam). If the plaintiff establishes a prima facie case, the defendant must introduce evidence showing a legitimate, non-discriminatory reason for the challenged employment action. *Denney*, 247 F.3d at 1183. If such a reason is given, the plaintiff must prove the stated reason is pretext for unlawful discrimination. *Id.*

Under the *McDonnell Douglas* burden-shifting framework, granting the Rule 50 motion was not error. Rubin testified to a legitimate, non-discriminatory reason for not promoting Appellants, because Appellants were ranked objectively in lower categories on the 2004 and 2007 Lists. The district judge properly examined whether Appellants presented evidence to show Rubin's legitimate non-discriminatory reason was pretext. Considering Appellants' circumstantial evidence and Appellants' stipulation that the process of evaluating and ranking the candidates was not at issue, the district judge concluded Appellants did not meet their burden of showing pretext with the evidence presented.[19] Notwithstanding

---

[19] Because they were ranked in the category from which Rubin promoted, the district judge allowed the claims of Appellants, who were in the 2004 "well qualified" and 2007 "outstanding" categories, to proceed to jury trial.

11

Appellants' contention, the district judge did not reexamine their prima facie case or disregard circumstantial evidence of pretext.

Appellants presented the facts regarding Rubin's comments on race and efforts to balance and diversify the workforce, but the district judge found these statements to be insufficient to establish pretext. We agree. The circumstantial evidence, including the comments, was not enough to establish pretext. *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 (11th Cir. 2004) (affirming an order granting summary judgment, when a plaintiff established a prima facie case but failed to establish pretext). The comments were isolated remarks and not directly related to the promotional decisions. *See Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002) (per curiam). While these statements can be considered as part of a circumstantial case of pretext, the comments alone are insufficient. *Id.*

To show pretext, Appellants also note Rubin asked for two candidates, Cindy Thompson and Ronnell Johnson, to be elevated into the "outstanding" category so he could promote them. This argument, however, fails. Thompson is Caucasian and in the same protected class as Appellants; therefore, she cannot serve as the basis for Appellants' claims. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (stating a comparator must be outside the protected class). Moreover, she was elevated so she could be promoted to a specific position for which she was specially trained. Similarly, Rubin testified he

12

elevated Johnson in order to promote him to a specific section in which "no one else had expressed an interest or had any seeming desire to be in that role," Trial Tr. at 337, and Appellants failed to show this legitimate, nondiscriminatory explanation was pretextual.[20] *See Combs*, 106 F.3d at 1538 (stating plaintiffs must demonstrate "such weakness, implausibilities, inconsistencies, incoherencies, or contradictions" in an employer's explanation "that a reasonable factfinder could find [it] unworthy of credence" (internal quotation marks omitted)). Moreover, Appellants stipulated that the compilations of the 2004 and 2007 Lists were race-neutral. Appellants also agreed the case was a disparate-treatment case. Appellants' argument the district judge "ignored" evidence that Rubin tainted the compilation of the lists is misleading, because Appellants stipulated to those facts prior to trial. Because Appellants failed to establish pretext, the district judge's partially granting Appellees' Rule 50 motion was not erroneous.

B. Expert Testimony

Appellants argue the district judge erred in excluding the testimony of their

---

[20] Appellants also refer to the district judge's order denying Appellees' motion for summary judgment, wherein the judge found it was clear Rubin had control and input in the panel's ratings, because he had requested two individuals be moved into different categories, and this was "probative of pretext because it contradict[ed] defendants' claim that the panel constituted an independent promotional process." Order Granting in Part & Den. in Part Mot. for Summ. J. at 15 (internal quotation marks omitted). This argument fails, however, because, at the summary judgment stage, the stipulation stating the compilation of the Lists was race neutral had not yet been entered. Additionally, Harold Miller, a former Deputy Chief under Rubin, who had participated on the panel in both 2004 and 2007, testified the panel made the ultimate decision to accept Rubin's two requested exceptions. Trial Tr. at 530-32, 545-47.

13

statistics expert, Dr. Macpherson.  We review a decision to exclude expert testimony under *Daubert*[21] for abuse of discretion.  *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 141-42, 118 S. Ct. 512, 517 (1997).  Federal Rule of Evidence 702 provides expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is "sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*"; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (citation and internal quotation marks omitted).

Dr. Macpherson evaluated the racial statistics of employee ratings and the promotion of Captains to Battalion or Section Chief in 2004 and 2007.  He opined the data suggests the number of Caucasian firefighters, who received an "outstanding" rating, and number promoted was not consistent with the number of Caucasians that one would expect to find with an "outstanding" rating or be promoted based on the total applicant pool.  The judge evaluated Dr. Macpherson's proffered opinion and found it was not reliable or relevant to the trial.  The judge concluded the expert's opinion was unreliable, because it did not take into account the panel interviews that, in conjunction with the test scores, resulted in the ranking

---

[21] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

of the candidates, rankings which Appellants stipulated were not the product of discrimination.

> The manner and method of the evaluation including that it did not account for the important classification process discredits the reliability of [the expert's] opinion that there "is statistical support that the race of candidates influenced" promotion decisions. . . . In this case of alleged "intentional discrimination," this "statistical support" is doubtfully probative on the issue of intent to discriminate.

Order Regarding Status Conference at 15-16. The judge additionally concluded that Dr. Macpherson's "statistics" were not helpful, because the jury was entirely capable of looking at the numbers and the racial classifications and making the same mathematical calculations without expert testimony.

Moreover, the district judge's thorough and well-reasoned order specifically addressed Dr. Macpherson's methodology and found it unreliable, because he failed to take the panel interviews into account. Dr. Macpherson's testimony was unreliable and was offered as opinion testimony on the ultimate issues of the case. Given the highly deferential standard in reviewing decisions to exclude expert testimony under *Daubert*, Appellants have not shown that the judge abused his discretion by excluding Dr. Macpherson's testimony. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (stating this court must defer to the district judge's decision on expert testimony "unless it is manifestly erroneous" (internal quotation marks omitted)). Additionally, expert testimony regarding anything other than Rubin's intentional discrimination in making the promotions was

15

irrelevant to the issues remaining in the case, because the parties stipulated the creation of the 2004 and 2007 Lists was not the result of discrimination.

C. Jury Instruction

Appellants also argue the district judge should have charged the jury regarding document destruction, because "Rubin intentionally destroyed all documentation supporting the creation of the ranked candidate lists from which he promoted Battalion and Section Chiefs." Appellants' Br. at 45. Jury instructions are reviewed de novo "to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party"; however, the district judge is given wide discretion concerning the style and wording employed in the instructions. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013). "In refusing to give a requested jury instruction, an abuse of discretion is committed only when (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *Id.* (alteration and internal quotation marks omitted).

Appellants' argument fails, because the allegedly destroyed evidence relates to the creation of the 2004 and 2007 Lists, which were created after the panel interviewed the candidates. Those Lists were, by stipulation, not at issue in this

16

case, and the parties had agreed not to refer to that part of the vetting process.[22]

Because the instruction did not deal with an issue properly before the jury, the

failure to give the instruction was not an abuse of discretion.  *See Lamonica*, 711

F.3d at 1309.

   **AFFIRMED.**

---

[22] Once the parties stipulated that the 2004 and 2007 Lists were not the result of any discrimination, they were precluded from going behind that stipulation.