BATTEN, District Judge:
This is an appeal from a judgment awarding unpaid wages and liquidated damages under the Fair Labor Standards Act (“FLSA”). Appellees challenge the judgment itself, as well as the district court’s denial of their post-trial motions under Federal Rules of Civil Procedure 50(b) and 59(e). For the reasons that follow, we affirm.
I. BACKGROUND
Mario Feliciano and Augustin Milan formerly installed hurricane shutters for Safe Hurricane Shutters, Inc. In relation to that employment, they brought this action along with seven of their former co-workers to recover unpaid overtime wages under the FLSA. In addition to the corporate defendant, they sued its president and CEO, Edward Leiva, and two of its directors, Steve Heidelberger and Francis McCarroll. After trial, the jury found in favor of Feliciano and Milan and against all of the defendants, awarding damages of $20,849.38 to Feliciano and $1,312.50 to Milan. The district court subsequently determined that Feliciano and Milan were entitled to liquidated damages in an amount equal to their actual damages and entered final judgment in favor of Felici-ano in the amount of $41,698.76 and in favor of Milan in the amount of $2,625.00.
After the judgment was entered, Safe Hurricane Shutters, Heidelberger, and McCarroll filed a renewed motion for judg *1306 ment as a matter of law and alternative motion for new trial under Federal Rule of Civil Procedure 50(b). They also filed a motion to alter or amend the judgment under Rule 59(e). The district court denied both motions. Safe Hurricane Shutters, Heidelberger, and McCarroll now appeal the judgment, as well as the district court’s order denying their post-trial motions.
II. DISCUSSION
The issues raised in this appeal require the application of several different standards of review, each of which will be discussed in context below.

A. In Pari Delicto

First, Appellants argue that the district court should have granted their motion for judgment as a matter of law based on the doctrine of in pari delicto, which states that “a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.” Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1152 (11th Cir.2006) (quoting Black’s Law Dictionary 794 (7th ed.1999)). “We review a district court’s ruling on a motion for judgment as a matter of law de novo.” Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 723 (11th Cir.2012).
Appellants argue that both Feliciano and Milan participated in the wrongdoing by failing to accurately report the income they earned from Safe Hurricane Shutters to the IRS. They further argue that Milan participated in the wrongdoing because he was an undocumented alien not authorized to work in the United States, and he applied to work for Safe Hurricane Shutters using a false Social Security number.[1] As a result, Appellants contend that Felici-ano and Milan should be barred from recovering under the FLSA.
We have previously held that undocumented aliens are “employees” who may recover unpaid wages under the FLSA. Patel v. Quality Inn S., 846 F.2d 700, 706 (11th Cir.1988). Appellants argue that the Supreme Court effectively overruled Quality Inn in Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 148-52, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). However,
[w]e are bound by the holdings of earlier panels unless and until they are clearly overruled by this court en banc or by the Supreme Court. While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point.
Randall v. Scott, 610 F.3d 701, 707 (11th Cir.2010) (internal citations and quotation marks omitted). For the reasons that follow, Hoffman is not clearly on point and therefore did not overrule Quality Inn.
In Hoffman, the Supreme Court held that the NLRB cannot award backpay to undocumented aliens who are terminated for union activity in violation of the National Labor Relations Act (“NLRA”). However, the Court did not disturb its prior holding that undocumented aliens “plainly come within the broad statutory definition of ‘employee’ ” contained in the NLRA. Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 892, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). Instead, the Court emphasized that it was merely limiting the remedies available to undocumented aliens under the NLRA. See Hoffman, 535 U.S. at 152, 122 S.Ct. 1275 (“Lack of authority to award backpay does not mean that the employer gets off scot-free.”). In Quality *1307 Inn, we found the statutory definitions of “employee” in the NLRA and FLSA to be analogous, and we drew upon Sure-Tan’s analysis of the NLRA in concluding that undocumented aliens are also “employees” under the FLSA. 846 F.2d at 702-03. Hoffman does nothing to cast doubt on that portion of our holding.
Nor does Hoffman cast doubt on our holding that undocumented aliens may recover their unpaid wages under the FLSA. The NLRA, which was at issue in Hoffman, grants the NLRB “broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review.” Sure-Tan, 467 U.S. at 898-99, 104 S.Ct. 2803. This limited judicial review includes the authority to reject the NLRB’s chosen remedy where it “trenches upon a federal statute or policy outside the Board’s competence to administer.” Hoffman, 535 U.S. at 147, 122 S.Ct. 1275. Hoffman was an exercise of that judicial authority; the Court rejected the NLRB’s remedy on the ground that it trenched upon the policies underlying the Immigration Reform and Control Act of 1986 (“IRCA”).
In contrast, no administrative body or court is vested with discretion to fashion an appropriate remedy under the FLSA. Instead, the Act unequivocally provides that any employer who violates its minimum wage or overtime provisions “shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.”[2] 29 U.S.C. § 216(b). Unlike the NLRA, there is nothing in the FLSA that would allow us to conclude that undocumented aliens, although protected by the Act, are nevertheless barred from recovering unpaid wages thereunder.
Moreover, Hoffman does not give us cause to reconsider whether the IRCA was intended to amend the FLSA by implication, removing undocumented aliens from its protection. Of course, Hoffman did not even go this far with respect to the NLRA; it merely concluded that in light of the policies underlying the IRCA, an award of backpay to an undocumented alien “lies beyond the bounds of the Board’s remedial discretion.” 535 U.S. at 149, 122 S.Ct. 1275. Even so, to give full consideration to Appellants’ arguments, we will determine whether Hoffman’s reasoning undermines our reasoning in Quality Inn. In doing so, we reemphasize that “amendments by implication are disfavored. Only when Congress’ intent to repeal or amend is clear and manifest will we conclude that a later act implicitly repeals or amends an earlier one.” Quality Inn, 846 F.2d at 704.
In Hoffman, the Court concluded that awarding backpay to undocumented aliens under the NLRA would be inconsistent with the IRCA, which “ ‘forcefully’ made combating the employment of illegal aliens central to ‘[t]he policy of immigration law.’” 535 U.S. at 147, 122 S.Ct. 1275 (quoting INS v. Nat’l Ctr. for Immigrants’ Rights, Inc., 502 U.S. 183, 194 & n. 8, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991)). The Court rejected the view that Congress would have made it a crime for an alien to obtain employment with false documents and “nonetheless intended to permit back-pay where but for an employer’s unfair labor practices, an alien-employee would have remained in the United States illegally, and continued to work illegally, all the while successfully evading apprehension by *1308 immigration authorities.” Id. at 149, 122 S.Ct. 1275. The Court reasoned that “awarding backpay in a case like this not only trivializes the immigration laws, it also condones and encourages future violations.” Id. at 150,122 S.Ct. 1275.
In contrast, an FLSA plaintiff “is not attempting to recover back pay for being unlawfully deprived of a job” that he could never have lawfully performed. Quality Inn, 846 F.2d at 705. “Rather, he simply seeks to recover unpaid minimum wages and overtime for work already performed.” Id.
In such circumstances, the immigration law violation has already occurred. The [award of unpaid wages] does not itself condone that violation or continue it. It merely ensures that the employer does not take advantage of the violation by availing himself of the benefit of undocumented workers’ past labor without paying for it in accordance with minimum FLSA standards.
Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 243 (2d Cir.2006). Thus, even after Hoffman, we maintain that “[b]y reducing the incentive to hire such workers the FLSA’s coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA.” Quality Inn, 846 F.2d at 704-05. In short, the IRCA does not express Congress’s clear and manifest intent to exclude undocumented aliens from the protection of the FLSA.
For the foregoing reasons, Hoffman is not clearly on point and we are bound to follow Quality Inn. Consequently, Milan’s ability to recover unpaid wages under the FLSA does not depend on his immigration status. However, Appellants argue that the in pari delicto doctrine still bars his recovery because in addition to being an undocumented alien, he applied to work for Safe Hurricane Shutters using a false Social Security number. They further argue that the in pari delicto doctrine bars both Feliciano and Milan from recovering under the FLSA because they failed to accurately report their income to the IRS.
The in pari delicto defense may be applied to bar recovery under a federal statute only where (1) the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of the suit would not substantially interfere with the statute’s policy goals. See Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-11, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985); Edwards, 437 F.3d at 1154-55. “The first prong of this test captures the essential elements of the classic in pari delicto doctrine.” Pinter v. Dahl, 486 U.S. 622, 633, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). The second “embodies the doctrine’s traditional requirement that public policy implications be carefully considered before the defense is allowed” and “ensures that the broad judge-made law does not undermine the congressional policy favoring private suits as an important mode of enforcing federal ... statutes.” Id. Because we conclude that the first prong is not satisfied in this case, we need not determine whether the in pari delicto doctrine is consistent with the policies underlying the FLSA, such that it may ever be applied to bar recovery under that statute.
In order ' to satisfy the first prong of the Bateman Eichler test, “[t]he plaintiff must be an active, voluntary participant in the unlawful activity that is the subject of the suit.” Id. at 636, 108 S.Ct. 2063 (emphasis added). “Plaintiffs who are truly in pari delicto are those who have themselves violated the law in cooperation with the defendant.” Id. (emphasis added) (quoting Perma Life Mufflers, Inc. v. Int’l Parts Corp., 392 U.S. 134, 153, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968)). In this case, neither Feliciano nor Milan coop *1309 erated with Appellants in violating the FLSA.
Appellants argue that Milan’s recovery should be barred because he would not have been hired absent his use of a false Social Security number. They further argue that both Feliciano’s and Milan’s recoveries should be barred because then-tax violations are “connected with the matter in litigation.” However, both of these arguments misstate the test to be applied under Bateman Eichler. Not just any causal relationship or topical connection will do. “The plaintiff must be an active, voluntary participant in the unlawful activity that is the subject of the suit.” Id. at 686, 108 S.Ct. 2063 (emphasis added). Appellants cannot satisfy that test because Feliciano and Milan did not participate in Appellants’ decision whether to pay them overtime wages in accordance with the FLSA. Therefore, the district court was correct to deny Appellants’ motion for judgment as a matter of law based on the in pari delicto doctrine.

B. Jury Instructions

Next, Appellants argue that two portions of the district court’s jury instructions require a new trial. First, Heidel-berger and MeCarroll contend that the district court gave erroneous instructions on the issue of their individual liability. Second, all Appellants argue that the district court erred in failing to instruct the jury on the fluctuating workweek method of calculating damages.
“We review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party, but the district court is given wide discretion as to the style and wording employed in the instructions.” Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1276 (11th Cir.2008) (internal citations omitted). “We review only for an abuse of discretion a district court’s refusal to give a requested jury instruction.” Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC, 684 F.3d 1211, 1224 (11th Cir.2012). “In refusing to give a requested jury instruction, ‘[a]n abuse of discretion is committed only when (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party.’ ” Id. (quoting Burchfield v. CSX Transp., Inc., 636 F.3d 1330, 1333-34 (11th Cir.2011)).
1. Individual Liability
The FLSA creates a private right of action against any “employer” who violates its minimum-wage or overtime provisions. 29 U.S.C. § 216(b). The Act defines the term “employer” broadly to include “both the employer for whom the employee directly works as well as ‘any person acting directly or indirectly in the interests of an employer in relation to an employee.’ ” Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir.2011) (quoting 29 U.S.C. § 203(d)). Based on this broad definition, we have joined the “overwhelming weight of authority” and held that “a corporate officer with operational control of a corporation’s covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.” Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir.1986) (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir.1983)). In this appeal, we must determine whether corporate supervisors other than officers may be personally liable under the FLSA, and we must clarify the degree and type of operational control that will support individual liability.
Heidelberger and MeCarroll argue that the district court’s jury instructions on in *1310 dividual liability require a new trial for three reasons. First, they argue that the district court should have instructed the jury that personal liability under the FLSA is limited to officers. Second, they argue that the district court should have instructed the jury that “any control over an employee in determining individual liability is limited to control over the employee-plaintiff, or individuals in his same position.” Third, they argue that the district court erred by instructing the jury that even occasional operational control can support individual liability.
We will consider only the first issue (non-officer liability) in our review of the district court’s jury instructions.[3] The record does not reflect that Heidelberger or McCarroll ever proposed an instruction that “any control over an employee in determining individual liability is limited to control over the employee-plaintiff, or individuals in his same position.” Therefore, the district court did not abuse its discretion in failing to give such an instruction. Also, the district court did not actually instruct the jury that occasional control can support individual liability.[4] Therefore, we need not consider whether such an instruction would have been erroneous.
In arguing that only officers may be held personally liable under the FLSA, Heidelberger and McCarroll rely on Wargo’s holding that “a corporate officer with operational control of a corporation’s covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.” Id. (quoting Agnew, 712 F.2d at 1511). But while it recognized personal liability for officers, Wargo did not purport to limit personal liability to officers, and the Act’s broad definition of “employer” does not admit of such a limitation. As we have previously stated, whether an individual fits that definition “does not depend on technical or isolated factors but rather on the circumstances of the whole activity.” Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir.2008) (quoting Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237 (5th Cir.1973)) (internal quotation marks omitted). In the typical case, a corporation’s officers will exercise more operational control than its directors and therefore be more susceptible to personal liability. However, usual corporate roles are not always observed, and some directors may assume more operational control than some officers. Therefore, a supervisor’s title does not in itself establish or preclude his or her liability under the FLSA, and the district court was correct in refusing to instruct the jury to the contrary.
2. Fluctuating Workweek Method
Appellants also take issue with the district court’s jury instructions on the issue of damages. The FLSA requires that employers compensate their employees for overtime hours “at a rate not less than one and one-half times the regular rate at which [they are] employed.” 29 U.S.C. § 207(a)(1). If the employer fails to do so, it will be liable to the employees for their “unpaid overtime compensation.” Id. § 216(b). The Act does not define the employee’s “regular rate.” However, in the case of an employee who is paid a constant weekly salary for fluctuating hours, the Supreme Court has found it *1311 acceptable to calculate the regular rate by dividing that weekly salary by the number of hours actually worked. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). This has come to be known as the “fluctuating workweek method.”
After Missel was decided, the Department of Labor (“DOL”) promulgated 29 C.F.R. § 778.114, an interpretive rule setting forth the fluctuating workweek method. Subsection (a) of the rule explains that where the fluctuating workweek method is used to calculate the employee’s regular rate of pay, “[p]ayment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.”
The DOL’s interpretive rule “sets forth one way in which an employer may lawfully compensate a nonexempt employee for fluctuating work hours; it is not a remedial measure that specifies how damages are to be calculated when a court finds that an employer has breached its statutory obligations.” Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 666 (7th Cir.2010). However, under Mis-sel, the fluctuating workweek method may be used to calculate an employee’s regular rate of pay and corresponding overtime premium for use in determining damages under the FLSA. Id. Appellants contend that the district court erred in failing to instruct the jury on the fluctuating workweek method for calculating damages in this case.
As an initial matter, we reject Feliciano and Milan’s argument that Appellants waived the application of the fluctuating workweek method by failing to plead it as an affirmative defense. The fluctuating workweek method is merely “one method of complying with the overtime payment requirements of 29 U.S.C. § 207(a)(1). It is not an exemption to it.” Samson v. Apollo Res., Inc., 242 F.3d 629, 636 (5th Cir.2001). Consequently, the fluctuating workweek method is not an affirmative defense; rather, “the employee bears the burden of proving that the employer failed to properly administer [it].” Id. As a result, we will consider Appellants’ arguments on this issue.
However, the fluctuating workweek method is not the only or even the default method for calculating damages when an employee is paid a weekly salary. In fact, it is conceptually subsumed within the broader rule that “[i]f the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate.” 29 C.F.R. § 778.113(a). We have previously deferred to this DOL interpretation of an employee’s “regular rate” of pay under the FLSA. Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268 n. 5 (11th Cir.2008). Consequently, “where the employee is paid solely on a weekly salary basis, the number of hours the employee’s pay is intended to compensate — not necessarily the number of hours he actually works — is the divisor.” Id. at 1269.
The district court properly instructed the jury to calculate Appellees’ regular rates of pay using the number of hours their salaries were intended to compensate. Based on this instruction, the jury could have determined that Appellees’ salaries were intended to compensate all hours worked and calculated their regular rates of pay accordingly. The district court further instructed the jury that “[t]he measure of damages is the difference between what the employee should have been paid under the act and the *1312 amounts that you find were actually paid.” Thus, if the jury determined that Appel-lees’ salaries were intended to compensate all hours worked, it should have determined that they were already partially compensated for their overtime hours at their regular- rate of pay and merely awarded an overtime premium at half that rate. This is, in effect, an application of the fluctuating workweek method.
Because the jury instructions actually given allowed the jury to effectively apply the fluctuating workweek method, we cannot conclude that Appellants were prejudiced by the refusal to give more specific instructions. See Goulah v. Ford Motor Co., 118 F.3d 1478, 1485 (11th Cir.1997) (“The district court’s refusal to give requested instructions is not error if the substance of the proposed instruction was covered by another instruction, which was given.”). While we would not adopt the district court’s instructions as a model, and more specificity is preferable, we hold that the district court did not abuse its discretion in refusing to give Appellants’ proposed instruction on the fluctuating workweek method.

C. Sufficiency of the Evidence

Next, Appellants argue that the district court should have granted their renewed motion for judgment as a matter of law or alternative motion for a new trial based on insufficiency of the evidence, and they raise three evidentiary issues. First, Hei-delberger and McCarroll argue that the evidence was insufficient to hold them individually liable under the FLSA. Second, all Appellants argue that the evidence was insufficient for the jury to refuse to apply the fluctuating workweek method. Third, all Appellants argue that there was insufficient evidence of Feliciano’s and Milan’s overtime hours to support the jury’s verdict.
“We review de novo the denial of a motion for judgment as a matter of law, which necessarily means that we apply the same standard as the district court.” Pensacola Motor Sales, 684 F.3d at 1226. Judgment as a matter of law is appropriate where “a reasonable jury would not have a legally sufficient evidentiary basis to find” for the nonmoving party on a controlling issue. Fed R. Civ. P. 50(a)(1). Consequently, “[w]e will reverse only if the facts and inferences point overwhelmingly in favor of [the moving] party, such that reasonable people could not arrive at a contrary verdict.” Ash v. Tyson Foods, Inc., 664 F.3d 883, 892 (11th Cir.2011) (quoting Goldsmith, 513 F.3d at 1275).
In conducting our review, “[w]e do not make credibility determinations or weigh the evidence.” Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 724 (11th Cir.2012). Instead, “we consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party.” Pensacola Motor Sales, 684 F.3d at 1226. We will “give credence to ... that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [it] comes from disinterested witnesses”; however, we will “disregard all evidence favorable to the moving party that the jury is not required to believe.” Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1211 (11th Cir.2010) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).
“We review a district court’s denial of a motion for a new trial for an abuse of discretion.” St. Luke’s Cataract and Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1200 n. 16 (11th Cir.2009). “[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great — not mere *1313 ly the greater — -weight of the evidence.” Id. (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir.2001)).
1. Individual Liability
Heidelberger and McCarroll argue that the district court should have granted their Rule 50 motion on the issue of individual liability for two reasons. First, they contend that they cannot be held personally liable because they were not officers of Safe Hurricane Shutters but merely “minority shareholders at the director level.”[5] As discussed above, this argument is meritless because non-officers may be held personally liable under the FLSA. Second, they argue that they did not exercise sufficient operational control to be held personally liable under the FLSA. In resolving this latter issue, we must clarify the degree and type of operational control that will support individual liability under the FLSA.
We recognize along with the First Circuit that “individuals ordinarily are shielded from personal liability when they do business in a corporate form, and that it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA.” Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 677 (1st Cir.1998). However, the FLSA contemplates at least some individual liability, and it is consistent with Congress’s intent to impose liability upon those who “control[ ] a corporation’s financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.” Id. at 678. A supervisor’s ownership interest in the corporation and control over the corporation’s day-to-day functions are relevant to this inquiry because they are indicative of the supervisor’s role in causing the violation. Id.
In this case, Heidelberger and McCar-roll testified that they each owned about 22.5 percent of Safe Hurricane Shutters and that their co-defendant, Edward Leiva, owned the same amount. McCar-roll testified that the remaining shares were owned by three individuals, each of whom owned smaller percentages than Leiva, Heidelberger, and himself. The fact that Heidelberger and McCarroll each owned a substantial percentage of the corporation suggests that they had control over its financial affairs and supports a finding of personal liability. However, Heidelberger and McCarroll argue that they were in fact absentee owners who did not exercise such control.
Our prior decisions addressing operational control have held that in order to qualify as an employer under the FLSA, a supervisor “must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.” Alvarez Perez, 515 F.3d at 1160 (quoting Wargo, 803 F.2d at 638). Heidelberger and McCarroll rely on this language to argue that the law is more favorable to their side than it really is.
First, they contend that “any control over an employee in determining individual liability is limited to control over the employee-plaintiff, or individuals in his same position.” We agree that relevant control for purposes of individual liability is control in relation to the employee-plaintiff. However, such control need not be proved directly. For example, the jury may infer such control from the exercise of general supervisory powers or the exercise of control over other employees. Thus, *1314 Heidelberger and McCarroll’s argument represents an incomplete statement of the law.
Next, Heidelberger and McCarroll argue that they could not have been involved in the “day-to-day” operations of Safe Hurricane Shutters because they were not there every day. Of course, one can be involved in “day-to-day” (i.e., regular) operations on an intermittent basis. Thus, Heidelberger and McCarroll’s argument fails semantically. But more importantly, it misses the point substantively. Again, our primary concern is the supervisor’s role in causing the FLSA violation, and it is possible for a supervisor to exercise enough control to play a substantial role in causing the violation while working only part-time. In short, the fact that control was exercised only occasionally “does not diminish the significance of its existence.” Donovan v. Janitorial Servs., Inc., 672 F.2d 528, 531 (5th Cir.1982).
However, to support individual liability, there must be control over “significant aspects of [the company’s] day-to-day functions, including compensation of employees or other matters in relation to an employee.” Alvarez Perez, 515 F.3d at 1160 (quoting Wargo, 803 F.2d at 638). In other words, while control need not be continuous, it must be both substantial and related to the company’s FLSA obligations.
With these principles in mind, we turn to the facts of this case. Viewed in the light most favorable to the plaintiffs, McCarroll was present at Safe Hurricane Shutters about two weeks per month and Heidelberger was present at least a few days but not more than one week per month. Both visited job sites to observe the progress of shutter installations, and McCarroll routinely distributed work orders to installers, describing the work they were required to complete that day. When the company started to struggle financially, Heidelberger, McCarroll and Leiva met with the installers to tell them that the company would be unable to pay them. Moreover, both Heidelberger and McCarroll promised installers that they would try to fix the problem so that the installers would eventually get paid. Hei-delberger even used $20,000 of his own funds to satisfy the company’s payroll obligations.
Although Heidelberger and McCarroll testified that they exercised less control than that described above, the jury was not required to believe them. And although it is undisputed that Leiva exercised more control than either of them, that does not diminish the significance of their control. McCarroll was present about half the time and had substantial supervisory powers in relation to installers. While Heidelberger was present less often, he exercised direct control over whether installers got paid by using his own funds for that purpose. Moreover, both Heidelberger and McCarroll met with installers to discuss payroll issues.
Based on these facts, a reasonable jury could have found that Heidelberger and McCarroll exercised control over “significant aspects of [the company’s] day-to-day functions, including compensation of employees or other matters in relation to an employee.” Id. (quoting Wargo, 803 F.2d at 638). When combined with their substantial ownership interests, this suggests that Heidelberger and McCarroll had sufficient control of the company’s financial affairs to “cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.” Baystate, 163 F.3d at 678. Therefore, the jury had a legally sufficient basis to hold Heidelber-ger and McCarroll individually liable, and its verdict was not against the great weight of the evidence. The district court did not err in denying Heidelberger and *1315 McCarroll’s Rule 50 motion on this ground.
2. Fluctuating Workweek Method
Appellants argue that the district court should have granted their Rule 50 motion on the applicability of the fluctuating workweek method. However, there was sufficient evidence for the jury to find that the weekly salaries Safe Hurricane Shutters paid Feliciano and Milan were intended to compensate them for only forty hours of work. Feliciano and two other former installers testified that Leiva agreed to pay them a weekly salary for forty hours of work, and although Milan testified that he did not know how many hours his weekly pay was intended to compensate, there was no reason to believe that his compensation was structured differently. Under these circumstances, we cannot say that the evidence points overwhelmingly in favor of Appellants or that the jury’s verdict was against the great weight of the evidence. Therefore, the district court was correct to deny Appellants’ Rule 50 motion on the fluctuating workweek method.
3. Overtime Hours
Appellants argue that the district court should have granted their Rule 50 motion because the evidence of Felici-ano’s and Milan’s overtime hours was insufficient to support the jury’s verdict. The FLSA places upon the employee-plaintiff “the burden of proving that he performed work for which he was not properly compensated.” Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). However, if the employer failed to keep time records, as in this case, that burden is relaxed. Specifically, in that circumstance
an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee’s evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
Id. at 687-88, 66 S.Ct. 1187. In this case, there was sufficient testimony regarding the hours Feliciano and Milan regularly worked to allow the jury to approximate the hours they actually worked in each week for which they sought to recover unpaid wages. In other words, there was sufficient testimony “to show the amount and extent of that work as a matter of just and reasonable inference.” Id. at 687, 66 S.Ct. 1187. Appellants did not negate the reasonableness of that inference as a matter of law; therefore, the district court did not err in denying Appellants’ renewed motion for judgment as a matter of law. Nor can we say that the jury’s verdict was against the great weight of the evidence such that the district court abused its discretion in denying Appellants’ alternative motion for a new trial.

D. Evidentiary Ruling

Appellants argue that they are entitled to a new trial because the district court erroneously excluded testimony by Leiva regarding a conversation he had with Rolando Ibacache. Ibacache was an installer at Safe Hurricane Shutters who was represented by the same law firm as Feliciano and Milan in a related FLSA action against Appellants. He was also a witness in this case. Allegedly, Ibacache told Leiva that one of the attorneys who repre *1316 sented the plaintiffs in both cases fabricated the overtime claims against Appellants.
During cross-examination of Ibacache in this case, Appellants’ counsel asked the following: “You told Mr. Leiva that the attorney said oh, let’s say you worked all these hours and we’ll get all these people involved and we’ll say that there was a big overtime violation here when there really wasn’t one. That’s what you told Mr. Leiva.” The district court overruled plaintiffs’ counsel’s hearsay objection, then Iba-cache responded, “I don’t remember. Maybe it is here, but I don’t remember.”[6] Appellants’ counsel then asked, ‘You might have said that. You don’t recall. That rings a bell. You might have said something like that. You can’t deny it?” Ibacache responded, “I said I did not remember.”
Three days later, Leiva testified, and Appellants’ counsel asked him, “What did Mr. Ibacache tell you about the overtime lawsuit, how that got started?” However, the district court sustained plaintiffs’ counsel’s hearsay objection, and Leiva was not permitted to answer. In response, Appellants’ counsel requested a sidebar conference, but that request was denied. Appellants represent that if their request for a sidebar conference had been granted, they would have proffered Leiva’s testimony regarding his conversation with Ibacache, i.e., that Ibacache told him than an attorney fabricated the overtime claims against Appellants.
As an initial matter, Feliciano and Milan argue that Appellants have not preserved this issue for appeal because they failed to raise it in their pre-verdict motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). That argument might have merit if the issue Appellants failed to raise in their pre-verdict motion was a challenge to the sufficiency of the evidence.[7] However, “[i]f there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial.” 9B Chaeles Alan Wright & ArthuR R. Miller, Federal Practice and Prooedure § 2540 (3d ed. 2008), available at Westlaw FPP.
In order to challenge a ruling excluding evidence, a party simply must “inform[] the court of its substance by an offer of proof, unless the substance was apparent from the context.” Fed.R.Evid. 103(a)(2). “Once the court rules definitively on the record — either before or at trial — a party need not renew an ... offer of proof to preserve a claim of error for appeal.” Fed.R.Evid. 103(b).
In this case, the substance of Leiva’s proffered testimony was obvious from its context. Ibacache had already been questioned about his alleged conversation with Leiva, and the question Appellants’ counsel posed to Leiva was obviously directed at that same conversation. No doubt the district court denied Appellants’ *1317 request for a sidebar conference because it already knew the substance of the proffered testimony. Therefore, as soon as the district court made a definitive ruling by sustaining the hearsay objection, the issue was preserved for appeal. We now turn to our substantive review of that ruling.
We have often stated generally that evidentiary rulings are reviewed for abuse of discretion. See, e.g., United States v. Dortch, 696 F.3d 1104, 1110 (11th Cir.2012). However, things are not always so simple. While evidentiary rulings often require an exercise of discretion that calls for this standard of review, they may also require legal and factual determinations that call for different standards. Specifically, “[t]he factual findings underlying [evidentiary] rulings are reviewed for clear error.” United States v. Lebowitz, 676 F.3d 1000, 1009 (11th Cir.2012). And questions of law underlying evidentiary rulings are reviewed de novo. See United States v. Westry, 524 F.3d 1198, 1215 (11th Cir.2008) (“[A] determination of whether a statement is against the declarant’s penal interest is purely a question of law subject to de novo review.”); cf. United States v. Henderson, 409 F.3d 1293, 1297 (11th Cir.2005) (“[B]asing an evidentiary ruling on an erroneous view of the law constitutes an abuse of discretion per se.”).
In this case, Appellants argue that Leiva’s testimony should have been admitted under the statement-against-interest hearsay exception found in Federal Rule of Evidence 804(b)(3). For that exception to apply, Ibacache must have been unavailable as a witness under Rule 804(a). Whether a declarant is unavailable as a witness under Rule 804(a) is a question of law that we review de novo. In so doing, we note that “[t]he burden of proving the unavailability of a witness under Rule 804(a) rests with the proponent of the hearsay evidence.” United States v. Acosta, 769 F.2d 721, 723 (11th Cir.1985).
A declarant is considered unavailable as a witness if, among other things, the declarant “testifies to not remembering the subject matter.” Fed. R.Evid. 804(a)(3). Appellants contend that Ibacache was unavailable because he testified that he did not remember his conversation with Leiva. However, Rule 804(a)(3) applies only if the declarant is unable to remember the “subject matter,” i.e., if “he has no memory of the events to which his hearsay statements relate.” N. Miss. Commc’ns, Inc. v. Jones, 792 F.2d 1330, 1336 (5th Cir.1986). The fact that the witness does not remember making the statements themselves is irrelevant. 5 CHRISTOPHER B. MuELLER & LAIRD C. KlRK-patrick, Federal Evidence § 8:112 (3d ed.2007), available at Westlaw FEPEV. Appellants have failed to identify, and we have not found, any testimony by Ibacache in which he claimed not to remember the subject matter of his alleged conversation with Leiva, i.e., whether the overtime claims were actually fabricated. Instead, Ibacache consistently maintained that he and the other installers worked overtime hours for which they were not compensated. Therefore, Appellants failed to satisfy their burden of showing that Ibacache was unavailable as a witness, and the district court did not err by excluding Leiva’s testimony as hearsay.

E. Payroll Tax Withholding

Finally, Appellants contend that the district court should have granted their motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) in order to exclude the amounts they are required to withhold for payroll taxes. ‘We review the denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion.” Shuford v. *1318 Fid. Nat’l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1341 (11th Cir.2007).
We find no abuse of discretion in the district court’s approach because Appellants can satisfy the judgment and comply with their withholding obligations without incurring duplicative liability. Any withholding payments they make to the IRS or state tax authorities on Appellees’ behalf will work toward satisfaction of the judgment. And once the judgment has been satisfied, in part through such payments and in part through payments to Appellees, Appellants may move for relief from the judgment under Federal Rule of Civil Procedure 60(b)(5) to ensure no further liability to Appellees.
III. CONCLUSION
We AFFIRM the judgment below, as well as the district court’s denial of Appellants’ post-trial motions under Federal Rules of Civil Procedure 50(b) and 59(e).

. Milan’s immigration status was not conclusively established at trial, but because we find it irrelevant to his ability to recover under the FLSA, we will assume that he was indeed an undocumented alien during the time he worked for Safe Hurricane Shutters.

. The court has discretion not to award liquidated damages if it finds that the defendant acted in good faith. 29 U.S.C. § 260. However, unpaid wages must be awarded regardless of the employer’s good faith.

. The other two issues will be considered below in the context of Appellants' challenges to the sufficiency of the evidence.

. The district court removed the following sentence from the plaintiffs' proposed instruction on individual liability: "Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control.” Trial Tr. vol. 5, 138-39, Apr. 15, 2011.

. There was some evidence that McCarroll held himself out as the vice-president of Safe Hurricane Shutters, but for purposes of this appeal, we will assume that he was merely a shareholder and a director.

. Appellants’ counsel had been using Iba-cache's deposition to impeach him. Presumably, when Ibacache said, "Maybe it is here,” he was referring to his deposition transcript.

. In that circumstance, the scope of our review would be limited to plain error. Howard v. Walgreen Co., 605 F.3d 1239, 1243 (11th Cir.2010). Appellants do argue that in the alternative to a new trial, the district court’s erroneous evidentiary ruling entitles them to judgment as a matter of law. This might be construed as an argument that if Leiva’s testimony had been admitted, the jury would have lacked a legally sufficient evidentiary basis to find for the plaintiffs. However, even assuming Leiva's testimony should have been admitted, such an argument would be meritless because the jury would not have been required to believe it.