[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10035
Non-Argument Calendar
_____

D.C. Docket No. 8:09-cv-00321-VMC-TBM

GUILLERMO RAMIREZ,

Plaintiff-Appellant,

versus

E.I. DUPONT DE NEMOURS & COMPANY,
a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 11, 2014)

Before MARCUS, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

This appeal originally was decided in December 2011, and the mandate issued in January 2012. In 2014, however, one of the judges on the original panel discovered that his wife owned stock in Defendant E.I. du Pont de Nemours & Company ("DuPont") at the time of the decision, so the judge determined that he should have recused himself from the appeal. The parties were informed of the disqualification, and Plaintiff-appellant Guillermo Ramirez, now deceased, requested reconsideration of the appeal through his wife. Although we do not think we necessarily need to reconsider the opinion because the judge was not aware of his wife's ownership in the company when he decided the case, so it could not have influenced him, we think that the better course to follow is for us to consider this appeal anew.

Accordingly, the Clerk is directed to **VACATE** the prior opinion issued in this appeal and issue the following opinion in its place. Nevertheless, after careful consideration of the record and the parties' briefs, we, like the previous panel, affirm the district court.

**I.**

Guillermo Ramirez brought this action alleging that he developed cancer from using Benlate50DF, a fungicide chemical product manufactured by DuPont, in his farming operations in the early 1990s. He sued DuPont under theories of strict liability and negligence. Ramirez alleged that Benlate was a defective

2

product because it contained a known carcinogen, Atrazine.  He asserted that he was diagnosed with kidney cancer in 2007 and brain cancer in 2008, "which was more likely than not caused by Atrazine in the Benlate."  During the litigation, doctors also found tumors in or around Ramirez's pancreas.

Following a trial, the jury, on special interrogatories, returned a verdict favorable to DuPont.  Specifically, although the jury found that Benlate was a defective product that was unreasonably dangerous to the user and that DuPont acted negligently, it did not find that Benlate was the legal cause of Ramirez's injuries.  The district court entered judgment on the verdict in favor of DuPont. Ramirez timely moved for judgment as a matter of law or, alternatively, a new trial, pursuant to Rules 50(b) and 59(a), Fed. R. Civ. P.  The court denied the motion, and Ramirez brought this appeal.  Ramirez argues on appeal that the district court should have excluded the testimony of DuPont's expert, Dr. Samuel Cohen, and that the jury verdict was against the manifest weight of the evidence.

## II.

We review the denial of a motion for judgment as a matter of law *de novo*, applying the same standards as the district court.  *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013).  We review the denial of a motion for new trial for an abuse of discretion.  *Id.*  We also review for an abuse of discretion a district court's rulings regarding the admissibility of expert testimony

3

under *Daubert*[1].  *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

## III.

### A.    Expert Testimony of Dr. Cohen[2]

Both sides introduced expert testimony at trial.  Dr. Robert Bloome, D.O., Ramirez's expert, testified that Benlate likely caused Ramirez's injuries.  By contrast, Dr. Cohen testified that none of the four chemical contaminants in Benlate at issue—Atrazine, Benomyl, Flusilazole, and Chlorothalonil—were related to any of Ramirez's tumors.  Dr. Cohen is a licensed medical doctor with a Ph.D. in cancer research. His research for over forty years has focused on the chemical causation of cancer and the mechanism by which that occurs, and he is a leading expert in this field. He receives some funding from private companies to investigate certain company findings and studied the chemical Flusilazole for DuPont.

Dr. Cohen based his opinion that Benlate was not the cause of Ramirez's injuries on his review of scientific literature on the chemicals, documents from the

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

[2] We question whether this issue was timely raised before the district court in such a way that it has been preserved for appeal.  Ramirez's pretrial motion to strike Dr. Cohen's testimony was not timely filed.  Also, Ramirez did not move to exclude Dr. Cohen's testimony at trial or request a *Daubert* hearing after Dr. Cohen gave the purportedly objectionable testimony, instead waiting until after the jury verdict to take any action.  Nonetheless, because the district court addressed this issue on the merits in response to Ramirez's post-trial motion, we also address the merits of this issue.

Environmental Protection Agency ("EPA") and DuPont, Ramirez's medical records, and the depositions of Ramirez and Ramirez's expert witness, Dr. Bloome, and on his personal research and experience. Dr. Cohen explained the process by which the scientific community goes about determining whether a particular chemical causes cancer in humans, which involves extrapolating from animal studies and applying various "safety factors." The EPA had done this type of risk assessment for the farming chemicals at issue in this case and established maximum exposure levels. The maximum level of exposure allowed by the EPA for Benlate is based on a lifetime of occupational exposure of 35-40 years. Even making "maximal types of assumptions" about Ramirez's level of exposure to the chemicals, Dr. Cohen opined that his exposure was well below the amount allowed by the EPA. Thus, assuming that the animal studies showing the chemicals to have some cancer-causing potential are relevant to humans, the level of Ramirez's exposure was well below that needed to cause tumors, according to Dr. Cohen.

Moreover, based on Ramirez's medical records, Dr. Cohen explained that Ramirez's tumors were unrelated to one another. In his general practice as a surgical pathologist, Dr. Cohen often is asked to evaluate tumors to determine whether they are cancerous, and he has direct experience working with the kinds of tumors Ramirez had. According to Dr. Cohen, the tumor in Ramirez's head or neck likely was not cancerous, and farming chemicals were not a known risk factor

5

for that type of tumor.  Ramirez had clear-cell carcinoma of the kidney, the most common type of kidney cancer.  The major risk factors for Ramirez's kidney cancer are obesity, hypertension, high blood pressure, cigarette smoking, and possibly diabetes, which usually is present in conjunction with obesity and high blood pressure.  Ramirez's medical records showed a history of these risk factors.  In addition, exposure to farm chemicals is not known to increase the risk of kidney cancer, and studies had shown that farmers generally had a decreased risk of developing tumors than the general population.  Finally, the tumor in or around Ramirez's pancreas appeared to be an "islet cell tumor," a less common type of tumor that arises from cells in the pancreas that produce insulin.

Under Rule 702, Fed. R. Civ. P., which governs the admissibility of expert testimony, "a district court acts as a gatekeeper to keep out irrelevant or unreliable expert testimony."  *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013).  In performing this gatekeeping function, trial courts should consider three basic requirements: qualification, reliability, and helpfulness to the jury.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*).  The reliability of scientific expert opinion depends on "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* at 1261-62 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 52-93, 113

S. Ct. 2786 (1993)).  In its role as gatekeeper, however, the district court should not supplant the adversary system or the role of the jury.  *Ala. Power Co.*, 730 F.3d at 1282.  Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786.

Ramirez contends that the district court should have excluded the testimony of DuPont's expert, Dr. Cohen, on both a procedural and a substantive basis. Procedurally, he asserts that Dr. Cohen's testimony was inadmissible because DuPont failed to disclose the documents upon which Dr. Cohen relied. Substantively, Dr. Cohen's opinion as to the legal cause of Ramirez's injuries was speculative and inadmissible under *Daubert*, according to Ramirez, because it was not based on sufficient and reliable facts and data regarding the specific Benlate that Ramirez used in his farming operations.  Ramirez asserts that Dr. Cohen improperly assumed, at DuPont's direction, that the Benlate he used contained chemical quantities lower than the maximum amount allowed by the EPA and therefore was "safe."

With respect to disclosure of the materials upon which Dr. Cohen relied, we find that DuPont adequately complied with Rule 26.  Ramirez does not assert that DuPont failed to disclose reliance materials but rather that DuPont did not

physically produce those materials.  But Ramirez's motion to exclude Dr. Cohen on the basis of lack of production was untimely, and Ramirez was not prejudiced by any failure to disclose, given that he could have requested production of the materials during discovery but, for whatever reason, did not do so.  Ramirez may not use his own apparent decision not to seek the materials as a basis for later seeking to exclude Dr. Cohen.  Accordingly, the district court did not abuse its discretion in denying Ramirez's motion to strike Dr. Cohen's testimony on that basis.

Furthermore, we disagree with Ramirez's contention that Dr. Cohen's trial testimony should have been excluded because it was speculative and based on insufficient facts and data.  Dr. Cohen clearly was qualified to testify as an expert as to whether the chemicals in Benlate caused Ramirez's cancer and tumors.  And Dr. Cohen's expertise on the chemical causation of cancer and the mechanism by which that occurs was helpful to the jury in determining whether the chemicals at issue caused Ramirez's injuries.  Therefore, the key question is whether Dr. Cohen's testimony was reliable.

Under the circumstances, Ramirez has not shown, and we cannot say, that Dr. Cohen's reasoning or methodology applied to the facts in issue was unsupported or unreliable.  *See Frazier*, 387 F.3d at 1261-62.  We find no support in the record for Ramirez's assertion that DuPont told Dr. Cohen to assume that

8

Benlate was safe or that the expert himself simply assumed as much. As Ramirez notes, there was no record evidence showing the actual quantities of the chemicals in the Benlate used by Ramirez, and Ramirez's actual exposure would also depend on various contextual factors, such as the safety equipment and procedures Ramirez used when mixing and spraying the chemicals. Thus, certainty was not possible in this context, nor do we require absolute certainty from expert testimony. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). Dr. Cohen identified the foundations and reasoning behind his opinions about Ramirez's likely level of exposure, and Ramirez was free to, and in fact did, challenge these foundations during trial.

The purported deficiencies identified by Ramirez go to the weight of Dr. Cohen's testimony, not its admissibility. *See id.* at 663. Dr. Cohen relied on documents from DuPont and the EPA and scientific literature to come to his conclusions regarding Ramirez's likely level of exposure. While Ramirez argues that this information was inaccurate because DuPont failed to report higher concentrations of the chemicals to the EPA, or actively misrepresented such information, this evidence does not render Dr. Cohen's testimony unreliable. Rather, this type of evidence is appropriate for cross-examination or rebuttal, "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786. Indeed, it appears that Ramirez was

9

successful in convincing the jury that Benlate was not safe.  Yet, as explained below, the fact that the product was defective does not necessarily mean that the product caused Ramirez's injuries.

Moreover, Dr. Cohen's testimony regarding the nature of Ramirez's cancer and tumors was unconnected to any assumptions about Ramirez's level of chemical exposure.  Consequently, to the extent that Dr. Cohen's assumptions regarding the chemical quantities in Benlate were defective, which, as explained above, we cannot say that they were, that defect would not be fatal to Dr. Cohen's testimony as a whole.  *See McClain*, 401 F.3d at 1245 (stating that a defect is fatal under *Daubert* when any step in the analysis is unreliable).

We also disagree with Ramirez's contention that Dr. Cohen's testimony was unreliable because he did not engage in a differential diagnosis or explain the cause of Ramirez's tumors.  Instead, we agree with the district court that Ramirez, as the plaintiff, bore the burden of proving that Benlate caused his injuries.  DuPont did not need to prove, and its expert did not need to testify to, what actually caused his injuries.

For these reasons, we defer to the district court's decision not to strike Dr. Cohen's trial testimony.  *See Frazier*, 387 F.3d at 1258-59.  Ramirez therefore is not entitled to a new trial or judgment as a matter of law on this basis.

*B.*    *Weight of the Evidence*

Ramirez also argues that the court erred in denying his motion for judgment as a matter of law or a new trial because the jury's verdict was against the manifest weight of the evidence.  Without Dr. Cohen's allegedly misleading and confusing testimony, Ramirez asserts, the evidence overwhelmingly supported that Benlate was the legal cause of Ramirez's injuries.  After reviewing the record and the parties' arguments on this issue, we can find no reason to disturb the jury's verdict and the final judgment entered for DuPont.

A court should not grant a new trial on evidentiary grounds unless, at a minimum, the verdict is against the great weight of the evidence.  *Lamonica*, 711 F.3d at 1312-13.  To be entitled to judgment as a matter of law, a party must show that "'a reasonable jury would not have a legally sufficient basis to find' for the nonmoving party on a controlling issue."  *Id.* at 1312 (quoting Fed. R. Civ. P. 50(a)(1)).  We will reverse the denial of a motion for judgment as a matter of law only if the facts and inferences, construed in the light most favorable to the nonmoving party, show that reasonable people could not arrive at a contrary verdict.  *Id.* (citing *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 892 (11th Cir. 2011)).

Ramirez first argues that the verdict in the case was inconsistent because it determined both that DuPont's product, Benlate, was defective and unreasonably dangerous to the user and that Benlate was not the cause of Ramirez's injuries.  We

11

agree with the district court that, under Florida law, defect and causation are separate elements of the causes of action at issue. *See Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1143 (Fla. Dist. Ct. App. 1981) (whether a product liability case is based on strict liability or negligence, plaintiffs bear the burden of showing a (1) defect in the product (2) that caused the injuries complained of, and (3) that the defect existed at the time the product left the manufacturer). Even in a case where the medical community recognizes that a chemical or agent causes the type of harm the plaintiff alleges, the plaintiff still must show "individual causation"—that the toxin in fact caused the plaintiff's injury. *McClain*, 401 F.3d at 1329. Therefore, assuming that the jury found that Benlate was unreasonably dangerous because it caused the same type of harm that Ramirez suffered, that finding would not preclude the jury from also finding that Benlate did not, in fact, cause those injuries in Ramirez. Accordingly, it was proper for the jury to evaluate these elements separately, and it was not necessarily inconsistent for the jury to conclude that the product was defective but that it was not the cause of Ramirez's injuries.

We also agree with the district court that the jury's verdict was not contrary to the great weight of the evidence in the case. The record supports that the jury was presented with numerous plausible reasons for determining that Benlate did not cause Ramirez's cancer and tumors. In addition to Dr. Cohen's expert testimony recounted above, the jury heard that when Ramirez sprayed his crops, he

12

rode inside an enclosed, air-conditioned tractor cab, wore protective clothing when mixing and spraying the chemicals, including goggles, a mask, a jumpsuit, gloves, and boots, and otherwise had minimal direct exposure to the chemicals.  The jury also heard that Ramirez's brother-in-law actually sprayed the Benlate that was the focus of the case.  Additionally, the jury was presented with evidence demonstrating that Ramirez had a history of diabetes, obesity, high cholesterol, high blood pressure, and a family history of cancer and kidney disease.  Many of these medical conditions were noted by Dr. Cohen to be major risk factors for the type of kidney cancer Ramirez had.  Moreover, the jury heard that Ramirez had a history of smoking cigarettes.

We recognize that much of this evidence was disputed and that other evidence presented during trial supports Ramirez's contentions.  But we cannot say that the jury's verdict was against the great weight of the evidence or that the verdict resulted in a miscarriage of justice.  *Lamonica*, 711 F.3d at 1312; *see Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001); *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984).  Consequently, the court did not abuse its discretion in denying Ramirez's motion for a new trial.  For these same reasons, we also find the court did not err in concluding that Ramirez was not entitled to judgment as a matter of law.

## IV.

In sum, we conclude that the district court did not abuse its discretion in refusing to strike Dr. Cohen's expert testimony and that the jury verdict was not against the great weight of the evidence.  Consequently, we hold that the court did not err in denying Ramirez's post-trial motion for judgment as a matter of law or alternatively for a new trial.

**AFFIRMED.**